LEROY E. WASHBURN *vs.* FANNY L. CAMPBELL & another.

Plymouth.   March 6, 1929. — May 29, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Ice Pond.   Easement.   Dam.   Dike.   Estoppel.   License.*

The respective owners of parcels of land on the two sides of a nonnavigable stream made a parol "arrangement" with a prospective purchaser of the two parcels whereby they respectively agreed that, upon the payment of the purchase money, they would deed their adjoining lands to him, and thereafter they permitted him to erect cement abutments for a dam upon each side of the stream, into grooves in which were inserted planks to dam the water for a pond for the harvesting of ice. Subsequently the wife of the prospective purchaser purchased the land on one side of the stream and mortgaged it, the

mortgagee knowing that the mortgage loan was being procured to pay the purchase price of that land and that the land was purchased for the purpose of making an ice pond by flooding it by means of the dam. The land on the other side was conveyed to the purchaser's son, who furnished the purchase price. Thereafter the father and the son carried on business by use of the dam and the pond until the mortgagee of the property in the mother's name foreclosed the mortgage and one who succeeded to that title refused to permit the further maintenance of the dam on his side of the stream. In a suit in equity by the son to restrain such interference with the dam, it was *held,* that

(1) No right was conferred upon the plaintiff by the provisions of G. L. c. 253, § 41, to erect and maintain a dam and dikes on the land of the defendant for the purpose of making an ice pond;

(2) The plaintiff had acquired no right to an easement permitting the maintenance of the dam; following *Stevens* v. *Stevens,* 11 Met. 251;

(3) The defendant was not estopped to deny the right of the plaintiff or of his father to continue to maintain the dam and dikes and create the ice pond by the mere fact that the mortgagee, his predecessor in title, knew the purpose for which the mortgage loan was procured;

(4) The bill was ordered dismissed.

BILL IN EQUITY, filed in the Superior Court on November 2, 1926, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. An interlocutory decree confirming the master's report was entered by order of *Brown,* J., who then reported the suit for determination by this court.

G. L. c. 253, § 41, reads as follows: "An owner or lessee of land used for an ice pond may erect and, between November first and March first, maintain a dam across a stream not navigable, for the purpose of making an ice pond by flowing adjoining land, subject to this chapter so far as applicable, if he annually pays to the owner of land which may be overflowed or injured thereby the amount of the tax which may from time to time be assessed on such land; but such dam shall not be erected without the consent of all of the owners of the land which would be flowed by it, unless the person proposing to erect it shall furnish to such owners as do not consent to the erection security, satisfactory to them or approved by a justice of a court of record or by a master in chancery, for the payment of

any damages which may be caused by flowing the land of such owners."

*E. J. Campbell,* for the plaintiff.

*E. J. Barry,* for the defendants, submitted a brief.

PIERCE, J.   This is a bill in equity whereby the plaintiff seeks to prevent damage and destruction by the defendants of a dam, built by the plaintiff, a portion of the dike of which dam is on land now owned by the defendants, and to establish the plaintiff's right to maintain said dam in its present location for the purpose of creating an ice pond, in accordance with the provisions of G. L. c. 253, § 41.

After the filing of the answer to the bill, the case was referred to a master, who made his report, no objection being filed thereto, on February 7, 1927.   On the same day an interlocutory decree was entered confirming the master's report.   No appeal was taken to this decree.   On the same day the defendants filed a motion that a final decree be entered on the master's report.   On June 7, 1927, a judge of the Superior Court reported the case to the Supreme Judicial Court upon the bill, answer, master's report and motions for a final decree.

The material facts found by the master are as follows:  The plaintiff and the defendant Fanny Campbell (who will be referred to as the defendant) are abutting owners of real estate located in Brockton.   A nonnavigable stream running from east to west divides the properties, the title to each running to the thread of the stream.   The plaintiff's land lies to the south and the defendant's to the north of the stream.   The dam lies near the westerly end of the property, and when operated floods a large part of the lands of both parties.   The dam is composed of two cement wings, with dikes projecting some distance on each side until they reach high land, thus forming an artificial pond, called Washburn's Pond.   The dike running northerly from the dam on the defendant's land is three hundred feet in length.   It is about three or four feet in thickness and varies in height from nothing to four feet.   The cement wings are grooved and the dam is closed by putting loose planks in these grooves.   The boundary line between the two properties comes at a point

in the center of the loose planks when they are in position, that is, the north one half of the planks and the whole north wing and north dike are on the defendant's land.

The plaintiff by deed of Wardwell and Brastow and by deed of Eastern Massachusetts Street Railway Company dated August 11, 1913, and November 4, 1922, respectively, each deed being recorded, became owner of Washburn's Pond to the center of Beaver Brook. The defendant traces title to her property on the north side of Beaver Brook and Washburn's Pond as follows: Alice Morey conveyed the property to Helen B. Washburn by deed dated December 18, 1910. Helen B. Washburn mortgaged this property to Oscar A. Campbell by mortgage deed dated January 30, 1911. Campbell foreclosed the mortgage under the usual power of sale on January 14, 1925, and became the purchaser. Oscar A. Campbell died testate on November 18, 1925, and by his will devised the property on the north side of Beaver Brook to his wife, the present defendant.

In 1908, the father of the plaintiff was desirous of going into the ice business and of growing cranberries. He made a parol "arrangement" with Alice Morey, who then owned the land on the north side of the brook, and with Wardwell and Brastow, who then owned a portion of the land now owned by the plaintiff on the south side of the brook, whereby they respectively agreed that, upon the payment of the purchase money, they would deed their adjoining lands to him. While these agreements were in force the father did a little digging for cranberry beds on the property adjacent to the north side of the stream. He also erected a dam in approximately its present location, with the dikes as they now exist and as above described. The body of the dikes was made from firm soil taken from the land south of the brook and the filling from the north side. He erected a second dam in 1911. The mother of the plaintiff was then the owner of the premises on the north side of the brook and she mortgaged them to Oscar A. Campbell, who knew that the mortgage was placed thereon for the purpose of raising money to pay the purchase price of the Morey property, and that the land was purchased for the purpose of making an ice pond by flooding

it by means of the above described dam and dikes. Mrs. Washburn gave parol permission for the dam and dikes and understood that the general purpose was to cut ice, as was later done. The premises have been used since the erection of the first dam, by the father or the plaintiff, in the business of cutting ice after flooding the area both north and south of the brook. The land south of the brook was deeded to the plaintiff instead of to the father because payments of the purchase price had been made by the plaintiff. The ice business was conducted by the father until 1917, and thereafter by the plaintiff, who had contractual relations with his father. In 1923 the plaintiff built an ice house on the south side of Washburn's Pond; he has an investment of $15,000 in the ice business and does a retail business from ice harvested on the pond amounting to $10,000 per year. The maintenance of the dam and dikes in substantially this present location and condition is necessary to a continuance of the business of harvesting ice at that place. Since the foreclosure the plaintiff has continued to flood the pond but has cut no ice over the locus of the Campbell land. Shortly after the foreclosure Campbell demanded that the plaintiff refrain from further flooding the former's land unless they could get together on a price, which price would be in excess of that provided in G. L. c. 253, § 41. The parties did not get together and now the defendant, claiming under Oscar A. Campbell, intends to make a breach in the dike on her land unless she shall be restrained by the court.

On the above statement of facts the defendant is right in her contention that G. L. c. 253, § 41, confers no right on the plaintiff to erect and maintain a dam and dikes on the land of the defendant for the purpose of making an ice pond. *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241. *Bliss* v. *Rice,* 17 Pick. 23. *Pratt* v. *Lamson,* 2 Allen, 275, 288.

The contention of the plaintiff that he has a right in the nature of an easement to maintain the dam and dikes on the defendant's land cannot be sustained. He holds no grant of such an interest from any legal owner of the land adjacent to and north of the brook. His right to maintain the dam

and dikes at the best is no greater than was the right of his father when he built the dam and dikes, in 1908 and in 1911, on the same land with the parol permission of the then owner, Alice Morey. The permission given the father by Alice Morey created a mere license which was terminable and revocable at the pleasure of Alice Morey, and of those who took title to the property by, through, or under her. G. L. c. 183, § 3 reads, "An estate or interest in land created without an instrument in writing signed by the grantor or by his attorney shall have the force and effect of an estate at will only, and no estate or interest in land shall be assigned, granted or surrendered unless by such writing or by operation of law." The facts and the rights thereunder claimed by the plaintiff are similar to those considered by Wilde, J., in *Stevens* v. *Stevens*, 11 Met. 251, and therein denied.

It is too plain for serious discussion that Campbell on the foreclosure of his mortgage was not estopped to deny the right of the plaintiff or his father to continue to maintain the dam and dikes and create the ice pond, because he furnished the money to buy the property and took the mortgage on the land to secure the repayment of it with knowledge that the land already purchased was used or was to be used to maintain the dam and dikes and to build up an ice business. The report does not disclose any word or act on the part of Campbell which was intended to induce, or did in fact induce, the mortgagor or her husband to borrow the money or give the mortgage, or any representation, express or implied, that the mortgagee if compelled to foreclose and take the property would not interfere with the maintenance of the dam and dikes as they were used and maintained when the mortgage was executed. Moreover, there is nothing in the report to indicate that Campbell by his loan, or by his acquiescence after the loan, encouraged the mortgagor, the father, or the plaintiff, to expend money on the faith that if the loan was not repaid he would not fully exercise the right of foreclosure which the mortgage deed gave him, and that, if he purchased the property, on the purchase thereof he would not assert as against the Washburns the full rights of an owner of the property.

There is nothing to warrant the contention that Campbell foreclosed the mortgage for the purpose of forcing the plaintiff to pay an exorbitant price for the privilege of maintaining the dike upon which his ice business depends.

It results that a decree must be entered

*Bill dismissed, with costs.*